UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ERICA LAWRENCE, f/k/a Erica Mosby, | Case No. 1:13-cv-294 |
| Plaintiff, | Weber, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

On May 3, 2013, Plaintiff[1] tendered a *pro se* complaint in this court seeking to appeal a decision of the Commissioner of Social Security under the Social Security Act. Plaintiff's motion to proceed *in forma pauperis* was granted and, on September 27, 2013, the Commissioner filed and served its answer and a certified copy of the administrative record. On April 2, 2014, Plaintiff belatedly filed a Statement of Errors,[2] to which Defendant filed a response in opposition on June 10, 2014. (Docs. 14, 26). In her Statement of Errors, Plaintiff generally complains that the Defendant's non-disability decision should be reversed, because she is totally disabled due to her mental impairments. As explained below, the undersigned concludes that the Commissioner's finding should be AFFIRMED, because it is supported by substantial evidence in the

---

[1]Plaintiff filed her claims and this appeal when she was known as Erica Mosby. However, during the course of this appeal, Plaintiff obtained a divorce and requested that this Court alter the docket to reflect her resumption of the surname of Lawrence.

[2]When Plaintiff did not file a Statement of Errors and subsequently failed to respond to an Order directing her to Show Cause for her failure to do so, the undersigned initially recommended dismissal for failure to prosecute. However, that Report and Recommendation was later set aside after, approximately two weeks following the entry of the R&R, Plaintiff tendered a belated Statement of Errors.

administrative record.

**I. Background**

Although Plaintiff has chosen to proceed *pro se* in this Court,[3] the administrative record reflects that Plaintiff previously was represented by counsel. Born in 1976, Plaintiff remained in the "younger individual" age category of 18-49 from the time she first applied for both disability insurance benefits ("DIB") and for supplemental security income ("SSI") in January 2008, through the date of the Commissioner's last decision. She has a limited education, having dropped out of school in the eighth grade, but is able to communicate in English. (Tr. 21, 31).

In the applications filed in 2008, Plaintiff alleged a disability onset date of June 16, 2007. Those claims were denied initially and upon reconsideration, following which Plaintiff sought an evidentiary hearing. A hearing was held on March 4, 2010, at which Plaintiff appeared with her attorney at the time, Daryl Crosthwaite, and presented testimony. Following the hearing, Administrative Law Judge ("ALJ") Donald Becher filed a written decision dated April 8, 2010 in which he determined that, despite several severe mental impairments, Plaintiff remained capable of full-time employment and therefore was not disabled. (Tr. 66-74). It does not appear that Plaintiff appealed that decision,[4] which is not at issue in this judicial proceeding.

Plaintiff obtained new counsel and filed new applications for DIB and SSI in July 2010, alleging a new disability onset date of April 9, 2010.[5] Once again, Plaintiff's

---

[3] Plaintiff was advised of the procedure to request the appointment of counsel, but declined to do so. (See Docs. 11, 13).
[4] There is some ambiguity in the record, (*see* Tr. 139, correspondence of Mr. Crosthwaite withdrawing from representation on grounds that Plaintiff's new attorney had filed a duplicate "appeal"), but no evidence of a formal appeal.
[5] Based on the date of the prior decision, April 9, 2010 was the earliest disability onset date that Plaintiff could allege in her new applications.

2

applications were denied initially and upon reconsideration, and Plaintiff timely requested an evidentiary hearing. An administrative hearing was held before a new ALJ, Gilbert A. Sheard, in January 2012. Plaintiff appeared, represented by her attorney at that time, Laura Ross, and provided testimony. An impartial medical expert and an impartial vocational expert also testified. Following the hearing, ALJ Sheard filed a written decision dated March 29, 2012, in which he also determined that Plaintiff was not disabled. Plaintiff's counsel filed a Notice of Appeal to the Appeals Council, which denied further review, leaving the ALJ's 2012 decision as the Commissioner's last decision.

In his decision, ALJ Sheard determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date, and that she had severe impairments of anxiety and depression. (Tr. 14). However, he found that Plaintiff's severe impairments did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, a determination that Plaintiff does not challenge here. (*Id.*). He acknowledged the presumptive residual functional capacity ("RFC") of the 2010 decision, *see generally* Acquiesance Ruling ("AR") 98-4(6); *Drummond v. Com'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), but found new and material evidence existed pertaining to the unadjudicated time period of disability. Based in part on the testimony of the psychologist who testified as a Medical Expert, the ALJ found that Plaintiff retained the RFC for a full range of work, but significantly limited by non-exertional (mental) restrictions as follows:

> She cannot understand, remember and carry out complex job instructions. Due to difficulties maintaining attention and concentration and pace for extended periods, the job must be routine and repetitive, and be far enough from others to reduce distractions, and not require intense focused attention until the next scheduled break, and have no assembly line type of work which forces an inflexible pace. The ability to perform

3

> activities within a schedule, maintain regular attendance, and be punctual within customary tolerances is impaired but not precluded. The ability to sustain an ordinary routine without special supervision is impaired but not precluded. Due to difficulties with co-workers, she cannot work as part of a close-knit work team, but must be doing her own work in her own workstation; there will be other people around, but she must just be doing her own thing. She has difficulty making work-related decisions, setting realistic goals, making independent plans, and using judgment on the job as distinct from a job which is routine and repetitive, so do not give her a job that requires such independent judgment. She cannot work directly with the general public. Due to difficulties responding appropriately to changes in the work setting, give her a job, which does not change frequently. The job itself must be inherently not highly stressful. Her ability to behave in an emotionally stable manner and to relate predictably in social situations is impaired but not precluded. Due to her low self-esteem and lack of confidence, do not give her a job, which would be a serious challenge to a person with her education and vocational background. She has an I.Q. of Low Average and a less than average memory. For this reason, do not give her complex or abstract work, all as set out in Exhibit B8F.

(Tr. 16). Based upon additional testimony provided by the vocational expert, the ALJ found that Plaintiff could not perform her past relevant work as a retail clerk or cashier. (Tr. 21). Nevertheless, he found that she could still perform jobs that exist in significant numbers in the local and national economy, including that of housekeeper. (Tr. 22).

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

4

by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to

5

prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B. Specific Errors

In her five-page handwritten Statement of Errors, Plaintiff indicates that she has held at least three full-time jobs since the ALJ's last decision, but states she has been unable to maintain employment at any of those positions, despite her best efforts. (Doc. 14 at 1). She indicates that she was either terminated for poor job performance, as was the case with the Westin Hotel, or "[i]t did not work out," as was the case with Merry Maids. Construing her *pro se* Statement liberally, she appears to be making a general argument that the ALJ's decision is not supported by substantial evidence. She states that her medications help her cope with daily activities but do not "stop my mental conditions," resulting in continued symptoms. (Doc. 14 at 2).

Plaintiff represents that she awakes and bathes by 4:30 a.m. in order to allow adequate time to wake her son, who must shower and be at the bus stop for school by 6:40 a.m. After she returns home from the bus stop, Plaintiff states that her "struggle begins," because she must care for her mentally disabled 14-year-old daughter, which exhausts her. (Doc. 14 at 3). Again, interpreting her claims liberally, she appears to argue that the ALJ's evaluation was limited to a set of records that show her "best behavior," reflecting her attempts to appear "normal" to those with whom she interacts. (Doc. 14 at 3). She argues that neither her neat grooming and physical appearance, nor her documented "best behavior," reflect the true severity of her allegedly disabling mental impairments. (Do. 14 at 4). She alleges that she visualizes killing and/or feels homicidal towards others, but that she "run[s] home to hide away," rather than acting on her impulses. (*Id.*).

6

Defendant disputes any contention that the ALJ's decision is unsupported by substantial evidence. However, Defendant first argues that Plaintiff's Statement of Errors is so vague in its claims as to be undeveloped and virtually indecipherable. Based on the lack of adequate articulation, Defendant asserts that this Court should deem any arguments to be waived.

In consideration of Plaintiff's *pro se* status in this Court, the undersigned declines to find Plaintiff's arguments to be waived merely on grounds that her claim is poorly developed. On the other hand, having reviewed the administrative record in its entirety, the undersigned finds that substantial evidence exists to support the ALJ's decision.

A portion of Plaintiff's argument relates to the issue of her credibility, to the extent that she appears to argue that the evidence of record does not fully reflect the extent of her disability, and/or that the ALJ unfairly disregarded her subjective complaints of incapacitating mental limitations. An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

It was clear at the hearing that the ALJ had serious concerns about the Plaintiff's credibility, in light of obvious and numerous conflicts between her testimony and her written disability applications. (*See generally* Tr. 41-44; *see also* Tr. 45 "Counsel, I hope

7

you have more questions for her, because you – because she just might have a credibility problem at this point."). In his written opinion, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with" the RFC determined by the ALJ.  (Tr. 17).  The ALJ explained that Plaintiff's testimony was inconsistent with record evidence that "when she began seeking regular treatment her symptoms dramatically improved," and that "over much of the past year, her mental status was described as stable, which is incongruent [with] the extreme description of symptoms that claimant provided."  (Tr. 19-20). In addition, the ALJ noted that Plaintiff "was frequently evasive in response to questioning at the hearing." (Tr. 20).  He pointed out that "[s]he gave numerous conflicting statements at the hearing, in particular, answering many questions to which she previously said she did not know the answer."  (Tr. 21).

> The ALJ provided multiple examples:
>
> She did not prepare or sign the daily activity sheet in the record, despite instructions to do so.  At the hearing, claimant admitted that she performed numerous activities of daily living, including going to a skating rink with a large number of people, with no apparent problems. Furthermore, claimant gave numerous conflicting statements, such as her statement that she had not smoked marijuana since 2006 or 2007, which is contradicted by a treatment note from October 2011 that claimant was in the early stages of remission from cannabis dependence (B7F/24).
>
> Claimant provided further conflicting testimony about her level of functioning.  At around the time of filing, she completed a function report, indicating that she either did not know or did not remember the answer to any of the questions…. Upon specific questioning at the hearing, claimant was evasive and provided contradictory statements.
>
> I asked claimant if she took care of anyone in her home.  She responded that she cared for her three children.  I inquired why claimant answered that she did not know whom she took care of on the function report.  Claimant was unable to explain her lack of earlier response, stating that she was confused and her children helped to care for her.
>
> I next asked claimant if her mental impairments caused her trouble getting

8

dressed, to which claimant said she was able to get dressed. Claimant explained that the reason she said she did not know the answer to such question on the function report, was that she was not good at completing paperwork. She provided no further explanation.

(Tr.20). The ALJ detailed additional examples, which are not repeated here in the interest of space.

Plaintiff ultimately admitted that she helps prepare meals for herself and her children, that she performs a number of household chores, that she goes shopping and to appointments, can count change, watches television, and spends time with her children. (Tr. 20-21). The undersigned notes that records submitted by Plaintiff in the course of this appeal indicate that she was married on April 8, 2009, and divorced just over four years later, on June 10, 2013, reflecting additional evidence of a significant relationship during her alleged disability period. (Doc. 14-1 at 12; *see also* Tr. 347). Relevant to Plaintiff's claim in this Court that she remains homicidal, the ALJ pointed out that in contrast to Plaintiff's testimony that she felt homicidal daily, her counselor had determined that Plaintiff was not at risk to herself or others. (Tr. 17).

The ALJ's RFC is strongly supported by the record in this case. He reviewed Plaintiff's mental health records in significant detail, noting that the record reflected no ongoing treatment or mental health complaints until July 2010, when Plaintiff reported she was in a stable condition, and was noted to be calm and pleasant during her exam. (Tr. 17). She reported stability and improved sleep through August 2010, and was not at risk of harming herself or others in September 2010. (Tr. 349). In October, 2010, she was cooperative and reported her mood was "ok." At a follow-up appointment she reported racing thoughts but remained alert, oriented, and cooperative. In November 2010, she presented with some symptoms, but reported sleeping well and denied violent ideation, and was again alert and oriented, with good cooperation. Her

9

medication was increased in order to address her reported depression and paranoia. (Tr. 17). By early 2011, Plaintiff reported her condition had stabilized and her mood was calm. She had no suicidal or homicidal ideation. Her good mood and stabled condition continued through April 2011. (Tr. 17). In May 2011, she reported medication side effects but remained stable, with good sleep and a euthymic mood. (Tr. 17). Her medications were changed in order to address the side effects. Two months later, Plaintiff reported that she was doing well and was able to tend to activities of daily living, with no medication side effects. (Tr. 17). By October 2011, Plaintiff began reporting that she felt homicidal nearly every day, but she scored low on a risk assessment and was noted to be making adequate progress on her goals. (Tr. 17-18; *see also* Tr. 340). Shortly thereafter at a counseling session, she had no violent ideation, and her thoughts were both linear and goal directed. (Tr. 18).

In addition to all of Plaintiff's counseling notes, the ALJ reviewed the April 2008 consultative examination opinion of Norman Berg, Ph.D., which stated that Plaintiff was not under mental health treatment at the time, had relevant and coherent thoughts, normal speech, and functioned at a cognitively moderate pace. Dr. Berg determined that Plaintiff had moderate limitations in coping with job stress, and marked restrictions in relating to others in a work setting, but no more than mild limits in other work-related mental functions. (Tr. 18). The ALJ gave "significant weight" to Dr. Berg's opinions up to the date of his opinion in April 2008. However, the ALJ determined that Plaintiff "no longer has marked limitations in social functioning" since that date, including the period of alleged disability at issue, based upon later record evidence.

The ALJ also reviewed a September 2010 consultative examination report by Dr. Berg, in which Plaintiff reported that she cooked, cleaned, did laundry, grocery shopped,

10

helped her kids with their homework, and attended to her personal hygiene needs. (Tr. 351-352). The ALJ reviewed the opinions of non-examining consultant Bonnie Katz, Ph.D., and those of another non-examining consultant, David Demuth., M.D. Finally, the ALJ obtained the testimony of an impartial psychiatrist as a medical consultant, who listened to Plaintiff's testimony and conducted a full records review. Dr. Rogers testified as to the "B" criteria and opined during the hearing concerning Plaintiff's mental RFC. The ALJ properly gave "significant weight" to his opinions. (Tr. 19).

Plaintiff has continued to assert in this proceeding, as she did before the ALJ, that she is disabled - not because she cannot obtain full-time employment - but because she cannot keep the full-time jobs that she secures for more than a few months at a time. (*See, e.g.,* Tr. 352, noting that Plaintiff "is applying for social security benefits based on what she described as significant difficulty she has not in obtaining employment but in maintaining employment."). However, considering all of Plaintiff's arguments, and evaluating both the ALJ's credibility assessment in particular and the record as a whole, I conclude that substantial evidence exists to support the determination that Plaintiff is not disabled. The ALJ carefully considered and appropriately evaluated all relevant opinion evidence, including that from Dr. Berg, state agency reviewing medical sources Drs. Katz and Demuth, and consulting psychiatrist Dr. Rogers. While there is no doubt that Plaintiff has serious and significant limitations due to her mental impairments, the ALJ took all credible limitations into account when formulating her mental RFC.

### III. Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** and that this case should be **CLOSED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ERICA LAWRENCE,                                    Case No. 1:13-cv-294
f/k/a Erica Mosby,

    Plaintiff,                                       Weber, J.
                                                           Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).